**MARION MERRELL DOW, INC., Plaintiff,**

v.

**GENEVA PHARMACEUTICALS, INC., Defendant.**

Civ. A. No. 94 N 495.

United States District Court, D. Colorado.

Dec. 27, 1994.

John S. Lutz, Otto K. Hilbert II, LeBoeuf, Lamb, Greene & MacRae, Denver, CO, S. Leslie Misrock, Brian D. Coggio, Thomas A. Canova, Pennie & Edmonds, New York City, for plaintiff.

Jeffrey A. Chase, Boyd N. Boland, J. Robert Crook, Holme Roberts & Owen, Steven J. Lee, Leslye B. Davidson, Kenyon & Kenyon, New York City, for defendant.

## ORDER AND MEMORANDUM
## OF DECISION

NOTTINGHAM, District Judge.

This is a patent-infringement case. Plaintiff seeks to enjoin defendant from marketing a pharmaceutical product on the ground that such use infringes upon a patent which plaintiff owns. Plaintiff brought suit after defendant filed an application with the Food and Drug Administration ("FDA") for approval to manufacture and sell a generic drug which, upon ingestion, converts into a compound that is claimed in plaintiff's patent. Defendant contends that approval of its application is warranted because plaintiff's patent is invalid. The matter is now before the court on defendant's "Motion for Summary Judgment" filed March 18, 1994. Jurisdiction is based on 28 U.S.C.A. § 1338(a) (1993).

## FACTS

Plaintiff Marion Merrell Dow, Inc., ("MMD") owned United States Patent No. 3,878,217, which was issued April 15, 1975, and expired April 15, 1994 (the "217 patent"). (Mem. in Supp. of Def.'s Mot. for Summ. J. of Invalidity of U.S. Patent 4,254,129, Statement of Undisputed Material Facts ¶ 3 [filed Mar. 18, 1994] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Opp'n to Def.'s Mot. for Summ. J. of Invalidity of United States Patent No. 4,254,129 at 3 [filed Apr. 5, 1994] [hereinafter "Pl.'s Resp."].) The 217 patent covered the administration of numerous piperidine derivative inventions, one of which was terfenadine. (Pl.'s Resp. at 3.) Terfenadine is a non-sedating antihistamine product, commonly known as "seldane." (*Id.*) When a patient ingests terfenadine, that compound is metabolized in the patient's body into several metabolites. (*Id.* at 4; *see* Pl.'s Supplemental Filing in Supp. of its Opp'n to Geneva Pharmaceuticals, Inc.'s Mot. for Summ. J. [Woodward Aff. ¶ 19] [hereinafter "Woodward Aff."].) A metabolite is the chemical product of a drug after it is orally ingested and metabolized by the liver. (*See* Pl.'s Resp. at 4 n. 5.) One of terfenadine's two major metabolites is a "carboxylic acid derivative" known as a "terfenadine acid metabolite" ("TAM"). (*See id.*, Ex. B [Woodward Aff. ¶ 10].) The term "acid metabolite" refers to a metabolite chemically altered by the liver to include what is known as an acid functional group. (*See id.* at 4 n. 5.) TAM is regarded as the agent or metabolic product that is primarily responsible for the non-sedating antihistaminic activity that occurs after the *oral administration* of terfenadine. (*Id.* at 4 [Woodward Aff. ¶ 12].) However, terfenadine, not TAM, induces the antihistaminic effect upon the *non-oral administration* of terfenadine. (*Id.*, Statement of Additional Undisputed Material Facts ¶ 2, Ex. B [Woodward Aff. ¶ 12].)

The 217 patent, which was issued April 15, 1975, disclosed the following relevant information: (1) facts concerning how to make terfenadine and terfenadine tablets; (2) the fact that terfenadine can be administered orally by tablets; and (3) the fact that terfenadine is an antihistamine. (Def.'s Br. ¶¶ 6–9.) The "practice" of the 217 patent did not, necessarily, result in the formation of an effective amount of TAM. (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶ 1 [Woodward Aff. ¶ 12].)

After approximately seven years of research involving the 217 patent, MMD sought and obtained an acid metabolite patent, United States Patent No. 4,254,129 (the "129 patent"). (Def.'s Br. ¶ 1.) The 129 patent was filed April 10, 1979, and expires March 3, 1998. (*Id.* at 3, Statement of Undisputed Material Facts ¶ 2.) The 129 patent claims the invention of TAM, as well as a method for administering an effective amount of TAM. (*See* Pl.'s Resp. at 4, 7.) The 129 patent does not claim the marketing of TAM in the United States. (*See* Def.'s Br., Statement of Undisputed Material Facts ¶ 15.) Prior to MMD's application for the 129 patent, a group of investigators published their research results regarding the use of terfenadine as an antihistamine in a document entitled "Inhibitory Activity of Terfenadine on Histamine-induced Skin Wheals in Man" (hereinafter the "Huther article"). (*See id.* at 2–3, Ex. B [Huther article].) The Huther article disclosed the oral administration of sixty milligram doses of terfenadine for use as an antihistamine. (*Id.*, Statement of Undisputed Material Facts ¶ 10.)

Defendant Geneva Pharmaceuticals, Inc., ("Geneva") filed an application with the FDA for approval to market a generic product which contains terfenadine, but does not contain TAM. (*Id.* at 5.) Geneva seeks to market tablets containing sixty milligrams of terfenadine. (*Id.,* Statement of Undisputed Material Facts ¶ 12.) Geneva sought approval of its patent only upon the expiration of the 217 patent. (*Id.,* Statement of Undisputed Material Facts ¶ 13.) As part of its application, Geneva certified to the FDA that the sale of its product did not infringe the 129 patent, and it also notified MMD of that certification. (*Id.* at 5.) Although Geneva has not begun to market generic terfenadine, MMD brought suit pursuant to 35 U.S.C.A. § 271(e)(2) (West Supp.1994), which provides that Geneva's certification and notification may be grounds for a statutory action alleging patent infringement. (*See id.* at 6.) MMD alleges that Geneva's terfenadine product infringes the 129 patent. (*Id.,* Statement of Undisputed Material Facts ¶ 14.) For purposes of the instant motion, Geneva admits to MMD's allegation of infringement because it maintains that MMD's 129 patent is invalid as a matter of law. (*Id.* at 13.)

## ANALYSIS

### 1. Legal Standard

▪ Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where there is "no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thrifty Rent–A–Car Sys., Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1194 (10th Cir. 1994). Pleadings and documentary evidence must be construed in favor of the party opposing the motion. *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 796 (10th Cir.1993). Summary judgment is as appropriate in a patent case as in any other matter. *See Barmag Barmer Maschi-*

*nenfabrik AG v. Murata Mach. Ltd.,* 731 F.2d 831, 835 (Fed.Cir.1984). However, the defense of "anticipation," which Geneva relies upon in this matter, often gives rise to complex fact issues which render those issues inappropriate for summary judgment. *See Proctor & Gamble Co. v. Nabisco Brands, Inc.,* 711 F.Supp. 759, 761 (D.Del.1989).

### 2. Validity of the 129 Patent

▪ Patents are presumed valid. *See* 35 U.S.C.A. § 282 (West 1984). To overturn a patent, the challenger must prove the facts supporting invalidity with clear and convincing evidence. *See Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.,* 796 F.2d 443, 446 (Fed.Cir.1986), *cert. denied,* 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987); 35 U.S.C.A. § 282; *see also Ryko Mfg. Co. v. Nu–Star, Inc.,* 950 F.2d 714, 715 (Fed.Cir. 1991); *Roper Corp. v. Litton Sys., Inc.,* 757 F.2d 1266, 1270 (Fed.Cir.1985). While the ultimate question of patent validity is one of law, several basic factual inquiries are required to resolve that question. A district court may grant summary judgment on patent invalidity only if the factual inquiries present no genuine issues of material fact. *See Ryko,* 950 F.2d at 716.

▪ One issue is dispositive of Geneva's motion: whether MMD's 129 patent is invalid as a matter of law. If the 129 patent is invalid, then Geneva has a right to apply for the FDA's approval to market generic terfenadine without the threat of MMD's infringement claim. If the 129 patent is valid, however, then MMD may pursue its infringement action against Geneva. Geneva maintains that the 129 patent is invalid because the 217 patent and the Huther article "anticipate" the 129 patent as "prior art." Before determining whether the 129 patent is valid, it is helpful to characterize the nature of MMD's infringement claim against Geneva.

### a. MMD's Infringement Claim Against Geneva

▪ A patent is literally infringed by an article or process when all the limitations of the claim are found in the article or process. *See Hormone Research Found. v. Genentech,*

*Inc.,* 904 F.2d 1558, 1562 (Fed.Cir.1990), *cert. dismissed,* 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991). A person directly infringes a patent claim by making, using, or selling the claimed invention. 35 U.S.C.A. § 271(a) (West 1984). A person may also be liable for indirectly infringing a patent by "inducing" or "contributing" to the infringement. *See* 35 U.S.C.A. § 271(b)-(c) (West 1984).

MMD relies upon the latter "contributory" infringement in its claim against Geneva. Infringement exists, according to MMD, "because the product to be marketed by Geneva converts after being ingested by a patient into a compound whose use, *inter alia,* is claimed in the 129 patent." (Pl.'s Resp., Introduction.) MMD states that "Geneva is free to market terfenadine so long as it does not convert into an effective amount of TAM during use." (*Id.* at 25.) Once terfenadine converts *in vivo* into TAM, MMD claims that Geneva infringes claims one, six, eight, and eleven of the 129 patent. (*See* Compl. ¶ 6.) MMD's first and sixth claims in the 129 patent cover a number of compounds, including TAM, but not including terfenadine; claim eight discloses TAM itself; and claim eleven covers a method of treating allergic reactions in a patient by administering an effective amount of TAM. (*See* Def.'s Br. at 12.)

Geneva's case law fails to establish that a product cannot infringe a metabolite on the ground that such metabolite is unpatentable; in fact, the case law presented indicates that the contrary is true, *i.e.,* that infringement may result from the *in vivo* conversion of one product or compound into another. *Cf. Zenith Lab., Inc. v. Bristol–Meyers Squibb Co.,* 19 F.3d 1418, 1423–24 (Fed.Cir.1994) (stating that proper inquiry requires comparison of the claimed patent with the alleged infringing compound *after ingestion* ), *cert. den.* —— U.S. ——, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994). In *Zenith,* the court also recognized a line of cases which provides that infringement may apply in situations involving *in vivo* conversions if the infringer uses an equivalent element to perform the same function as the claimed compound. *Id.* at 1425–26, & n. 11 (citing and distinguishing cases).

### b. The Doctrines of Anticipation and Prior Art

■ Geneva admits, for purposes of this motion, that its application to market terfenadine infringes the 129 patent. It maintains that MMD's 129 patent is invalid based upon the doctrine of anticipation. Anticipation occurs where a patent or printed publication discloses an invention claimed in a subsequent patent. *See Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir.1991); *Proctor & Gamble,* 711 F.Supp. at 773. A patent claim is anticipated, and therefore invalid under 35 U.S.C.A. § 102(b) (West 1984),[1] only if a single prior art reference previously disclosed all the elements and limitations in the subsequent claim. *See Scripps,* 927 F.2d at 1576; *Lindemann Maschinenfabrik GMBLT v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1457 (Fed.Cir.1984). "Unless all of the same elements of the patented device are found in a single prior art device in exactly the same way to perform an identical function, the former is not anticipated by the latter." *See Roberts v. Sears, Roebuck & Co.,* 723 F.2d 1324, 1332 (7th Cir.1983) (quoting *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.,* 436 F.2d 1180, 1182–83 [7th Cir.], *cert. dismissed,* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 [1971] ).

■ The classic test of anticipation is characterized as follows: "That which would *literally* infringe if later in time anticipates if earlier than the date of invention." *Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 747 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988). Anticipation is a question of fact. *Scripps,* 927 F.2d at 1576. To determine whether a patent is anticipated by a prior art reference, a two-step analysis is required: (1) the iden-

1. Section 102 provides that a person is entitled to a patent unless:
the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. 35 U.S.C.A. § 102(b).

tity of the patent, as well as its scope, must be determined by the claims submitted to and allowed by the patent office; and (2) the patent, once defined, must be compared with each prior art reference. *See Roberts,* 723 F.2d at 1333. Although a patent may appear understandable without extrinsic evidence, technical subtleties developed through expert testimony may substantially change such perceptions. *See id.*

### c. Geneva's Anticipation Argument

Geneva argues that because the 217 patent and the Huther article were issued more than a year before MMD's application for the 129 patent, they constitute prior art to the 129 patent, pursuant to section 102(b). (Def.'s Br. at 11.) Geneva maintains that whatever the 217 patent and the Huther article disclosed may not be validly claimed by the 129 patent. (*Id.*) According to Geneva, the 217 patent and the Huther article disclosed "the preparation of terfenadine and the oral administration of terfenadine tablets as an antihistamine in people." (*Id.*) Geneva admits that the 129 patent discloses TAM and its proper administration, rather than disclosing terfenadine. (*Id.* at 12.) Nonetheless, Geneva argues that because the metabolism of terfenadine into TAM is "inherent" when terfenadine is taken orally, that result is "considered to be part of the disclosure for anticipation." (Geneva's Reply Mem. in Supp. of its Mot. for Summ. J. of Invalidity of MMD's Acid Metabolite Patent, Resp. to MMD's Statement of Additional Undisputed Material Facts at 8 [filed Apr. 19, 1994] [hereinafter "Def.'s Reply"].)

Geneva cites several cases in support of its inherent anticipation theory. *See Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628, 633 (Fed.Cir.), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987); *In re King,* 801 F.2d 1324, 1326 (Fed.Cir. 1986). Geneva does not, however, present material facts which would allow me to conclude, as a matter of law, that the claims involved in the 217 patent and the practice described in the Huther article inevitably or invariably result in the formation of an effective antihistaminic amount of TAM, as set forth in the 129 patent. Nor does Geneva provide evidence or testimony establishing that each element in the 217 patent is identical to the 129 patent. Instead, Geneva relies upon a British court's decision wherein MMD apparently agreed that if the directions contained in a similar British terfenadine patent were followed, TAM was an inevitable result.[2] (Def.'s Reply at 8, n. 4.) In this case MMD maintains that "Geneva has failed to present *any* evidence that the practice of [the 217 patent or the Huther article] leads to [that inevitable] result." (*See* Sur–Reply Mem. of Pl. in Opp'n to Def.'s "Reply Mem. in Supp. of its Mot. for Summ. J. of Invalidity of MMD's Acid Metabolite Patent" at 5 [filed May 12, 1994].) Geneva argues that MMD's above assertion should be stricken because MMD did not identify that contention in a Statement of Additional Undisputed Material Facts. (*See* Def. Geneva's Resp. to Pl. MMD's Sur–Reply Mem. Regarding Summ. J. of Invalidity at 3 [filed May 23, 1994].) Geneva misconstrues the burden of proof in this matter, which requires the moving party to establish the nonexistence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 321, 106 S.Ct. at 2552. Geneva did not address this material fact in its Statement of Undisputed Material Facts. (*See* Def.'s Br., Statement of Undisputed Material Facts ¶¶ 1–16.) I find Geneva's reliance on MMD's actions before a British court insufficient for purposes of the instant motion.

Geneva also argues that "by alleging that Geneva's terfenadine will infringe the [129 patent], MMD necessarily and symmetrically admits that the prior art [217 patent] and/or Huther article anticipate, and thus invalidate the [129 patent]." (Def.'s Br. at 14.) In other words, because terfenadine and its use as an antihistamine entered the public domain upon expiration of the 217 patent, they are no longer MMD's property. (*Id.*) Geneva argues that it is merely trying to practice "exactly that art of making and using terfenadine as an oral antihistamine, placed in the public domain by the [217 patent] and the [Huther article]." (Def.'s Reply at 4.) Further, Geneva contends that "[i]f the claims of the [129 patent] are so construed such that

---

**2.** Geneva did not include the record from the British court's decision.

the administration of terfenadine is an infringement—as alleged and admitted by MMD—they are clearly invalid because they do not claim a new invention. They are anticipated." (Def.'s Br. at 14.) I find that Geneva's arguments are merely circular. Geneva makes the mistake of comparing its application to market terfenadine to the 217 patent and Huther article, rather than comparing the 217 patent and the Huther article to the 129 patent.

To meet its burden in this matter, Geneva must establish by clear and convincing evidence that each element of the challenged claim of the 129 patent was expressly included in the 217 patent or the Huther article. Although neither party has contested any of the undisputed facts presented by the other party, my review of the record reveals that Geneva has not sufficiently alleged material facts necessary to determine as a matter of law whether anticipation exists in this case. Moreover, MMD has offered disputed facts and testimony sufficient to raise genuine issues of fact rendering summary judgment inappropriate. (*See* Woodward Aff. ¶¶ 15–19.) It is unclear to me whether, scientifically, all the elements regarding terfenadine and its administration, as claimed in the 217 patent, are identical to the elements regarding TAM and its administration as claimed in the 129 patent. Although I express no opinion concerning the ultimate merit of Geneva's ability to establish such facts at trial, I find that such determination cannot be made based upon the record before me.

### 3. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

1. Defendant's motion for summary judgment is DENIED.

2. Defendant's motion for hearing on defendant's motion for summary judgment filed November 28, 1994, is DENIED.

3. The Court will conduct a status conference on Thursday, January 5, 1995, at 8:00 o'clock a.m. to determine where the parties are in discovery and what schedule should be followed.