91 F.3d 169
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
IN RE Kaoru OKUI and Manabu Kobayashi
 No. 94-1434.
 United States Court of Appeals, Federal Circuit.
 June 5, 1996.
 
 Before ARCHER, Chief Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge. ARCHER, Chief Judge.
 ARCHER, Chief Judge.
 
 
 1
 Okui appeals from the June 30, 1993 decision of the Board of Patent Appeals and Interferences, as modified by its April 13, 1995 decision on reconsideration, holding claims 8 through 14 in Patent Application Serial No. 07/692,698 (the '698 application) unpatentable under 35 U.S.C. §§ 102 and 103. We affirm.
 
 DISCUSSION
 
 2
 This case presents a question of inherency. The claims at issue are directed to a configuration of an intake manifold for the engine of a motor vehicle which has a crushable plenum chamber to absorb the impact of a front end collision and which reduces engine noise by directing the sound of accessories downward and away from the passenger compartment.
 
 
 3
 A prior art reference which does not explicitly disclose an aspect of a claimed invention, may nevertheless serve to render that claim unpatentable if the element is inherent therein. See, e.g. Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 20 USPQ2d 1746, 1749 (Fed.Cir.1991). Inherency requires that the "structure in the prior art necessarily functions in accordance with the limitations of a ... claim of an application." In re King, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986)
 
 
 4
 The limitation of claim 8 at issue is as follows:
 
 
 5
 said plenum device being formed of a crushable material and located within said engine compartment to absorb forces on vehicle front end impacts and for restricting the flow to said intake manifold under such conditions to reduce engine speed.
 
 
 6
 The board found that U.S. Patent No. 4,798,254 to Lings possessed a plenum chamber, that it was inherently crushable and that, based on its location, it would necessarily restrict air flow to the manifold. The board noted that crushable means capable of being destroyed and that Lings' plenum chamber is capable of being destroyed.
 
 
 7
 Claim 8 only requires that the plenum be formed of a "crushable" material; it does not further define crushable. The specification yields little additional guidance as to what "crushable" means. It only provides that the crushable material is an aluminum alloy casting or a plastic. While Lings does not state from what material its plenum chamber is formed, the examiner pointed out that the drawings symbolically depict that the plenum is aluminum which is a common material in car parts. Thus, the board found that Lings' plenum would necessarily be crushable upon sufficient impact. Accordingly, Lings inherently discloses a crushable plenum chamber.
 
 
 8
 With regard to the location of the plenum chamber, claim 8 requires that it be placed at the forward end of the engine manifold. According to the specification, this construction results in the plenum being contacted first upon front end impact, reducing air to the manifold and, thereby, slowing the speed of the engine. Figure 10 in Lings shows the plenum chamber placed forward of the manifold. It does not describe placing the plenum in that position for the reasons described in the '698 application. Nonetheless, the board found that Lings' plenum would be contacted first upon front end impact and would cut off the air to intake valves to the manifold. Thus, the board did not err in concluding that this embodiment of Lings would inherently perform the function claimed.
 
 
 9
 In claim 11, the only limitation at issue is:
 
 
 10
 said manifold extending uninterruptedly from one end of the manifold to the other end of the manifold for directing noises generated by said engine accessories downwardly and away from said passenger compartment.
 
 
 11
 Appellants argue that none of the references cited by the examiner teach providing a manifold structure that acts as a silencing device by shielding the noise of accessories and directing them away from the occupants of the vehicle as claimed. Appellants argue that "uninterruptedly" means without openings and that the manifold disclosed in the prior art, and particularly U.S. Patent No. 4,372,112 to Ackerman, is not continuous but rather has a plurality of individual pipes that extend from each cylinder to a common manifold collector section.
 
 
 12
 The board interpreted uninterruptedly as meaning that there is a continuous structure from one end of the manifold to the other. The board determined that because the manifold of Ackerman is cast as one piece and extends continuously from one end to the other it meets the claim language even though it has voids in the structure. The board also said that the Ackerman manifold is capable of directing noise away from the passenger compartment.
 
 
 13
 The term "uninterruptedly" does not appear anywhere in the '698 application except in the claims. The specification only describes the manifold as extending "substantially continuously." The preferred embodiment is described as having a generally arcuate configuration with individual runners for each of the combustion chambers and/or intake valves with the runners connected by webs. This manifold configuration is said to deflect noises generated by the engine accessories downwardly and away from the passenger compartment.
 
 
 14
 While the manifold disclosed in Ackerman does not have webs connecting each runner, the manifold does extend, as one unit, across the engine compartment. Appellants have failed to show that uninterruptedly as used in the claims means that the structure must have solid webbing without openings. Thus, the board properly found that the Ackerman manifold is "uninterrupted" as that term in claim 11 is properly interpreted. In addition, while the Ackerman manifold does not have webs, it nonetheless has structure and, as the board found, necessarily deflects some of the sound waves reaching it downward. The noise deflection may not be as great as that provided by appellants' invention, but appellants have not quantified the amount of noise deflection required by the manifold. Thus, the Ackerman manifold satisfies the "uninterruptedly" claim limitation and inherently performs the function claimed.